BANK OF AMERICA My name is Richard Faber. I represent Plaintiff Jim Cherry individually and on behalf of a similarly situated class of persons identified in our complaint. I'm here with Joseph Dolan and we also represented Mr. Cherry in the trial court. We submit that the district court erred in granting the motion to dismiss for five primary reasons. First, that the court resolved disputed reasonable inferences in defendant's favor instead of plaintiff's favor. Second, that the contract is reasonably susceptible to the interpretation proffered by plaintiff. Third, that the court erred in declining to consider how the parties, America West and Bank of America, interpreted ten years of prior affinity marketing agreements. Fourth, that the court erred in deciding the plaintiff did not occupy third-party beneficiary status. And fifth, the court erred in deciding that the plaintiff did not occupy third-party beneficiary status to assert a claim in that status. He was precluded from asserting his statutory claims for relief and the portion of the breach of contract claim for good faith and fair dealing as a cardholder. Mr. Faber, can you help me with regard to the third-party beneficiary issue? As I understand it, your client is claiming rights under the agreement between Bank of America and America West. Yes, Your Honor. And I looked at, I guess, the relevant portion of that contract, and it seemed to me that all it does is talk about the rates at which Bank of America would offer the credit card program through America West. And I'm wondering why did Judge Teelborg err in finding that because that is a contract as between those two parties, it doesn't inerr to the benefit of any of the subsequent cardholders? Yes, before I answer that, let me back up a second. I'd like to allot nine minutes for the four claims for relief, six minutes for attorney's fees. So you're going to have to keep track of your own time. All right. Five minutes for rebuttal. Primarily because the contract specifies that the rates, precise numerical rates that are indicated on Exhibit B to the exhibit cannot be changed unless 90 days prior written notice is provided to America West. Now, that's not a change of a rate that America West is paying. That's a change of a rate that the cardholder is paying. And we point out to the Court that nowhere below in either the motion to dismiss, responses and replies are going to change. Yeah, but America West, I mean, I fly America West frequently. They sell T-shirts. They sell these credit cards at the airport. They want to know when the rate changes. This is a very competitive thing for them. Absolutely. We are not denying that America West is a beneficiary of the agreement for reasons that reasonable rate being charged, as is required by the agreement as well. But the agreement also says that the rates attached on Exhibit B cannot be changed without prior 90-day written notice. Now, their position is, well, but it only says intends to offer. So if it says intends to offer, then that's sort of an aspirational goal. And there's nothing mandatory about that. We would respond with three points. First, the 90-day notice provision becomes meaningless and illusory if the intent to offer provision is only interpreted as an aspirational goal. To what rate would the first 90-day notice provision to America West apply, if not to the rates specified on Exhibit B in the January 2001 agreement? Was there any evidence in the record that at the time that the card was issued to Mr. Cherry and to the other putative members of the class that they were given the usual insert that comes with my credit cards that I never read that tells me all the terms and conditions, including the rate that's going to be charged? And it also warns me that if there are changes in any of the terms and conditions, that by my subsequent use of that card, I am by that act agreeing to the changes in the terms. Absolutely. And there was evidence that that was the way that the rates were communicated to the cardholder? Yes. And we also alleged that the rates that were communicated to cardholders during the approximately ten years of that relationship were the rates that were specified in the agreements between Bank of America and America West. They weren't pulled out of the air. They weren't made up pursuant to some claim of sole discretion. They were the rates contained in the contracts. But as I understand your argument, the argument is that under the third-party beneficiary theory that if those rates became more favorable as between Bank of America and America West, that your client was entitled to the lower interest rate, even though he was and the credit card issuer, which states what the interest rate will be so long as he continues to use the card. Yes. And our contention in that regard, with all inferences being resolved in plaintiff's favor, is that the parties understood that that rate, lower or higher, was governed by the terms of the agreement. And again, back to the 90-day notice period. In terms of which agreement? Which agreement, though. That's what I'm trying to get at. Well, in this case, we're alleging they didn't comply with the terms of the 2001 agreement. But you're not, you're not, or you're conceding that they complied with the terms of the direct agreement between the credit card holder and the issuer? Yes. Yes. Okay. Yes, but that they had no authority to charge any rate other than the rate specified in the agreement with America West pursuant to the 90-day notice provision. We would with defendant entirely if the contract did not have a requirement that before changing the rates in the agreements between America West and Bank of America, that Bank of America provide America West 90 days' written notice of that change. Because then they would, in fact, their reading of the agreement is fine. But under the rules of construction that say when interpreting an agreement, all provisions should be interpreted in a manner that give meaning to all provisions, if we simply stick with the cardholder agreement itself, then the 90-day notice provision has no meaning because Bank of America has sole discretion to do whatever it wants. But the 90-day notice provision benefits America West. I mean, unless we buy your third-party beneficiary theory, it doesn't matter vis-a-vis the cardholder unless he is truly a third-party beneficiary. And I guess I'm trying to, if we rule in your favor, what will that do to the practice of car dealerships that sell cars where the financing rate today is 0.9%, but two months from now, it's lower. Let's say it's 0.5%. Does that mean that somebody who bought the car at 0.9% is now entitled to have the interest rate lowered on the car because GMAC is offering better interest rates down the road? No. If that car dealership had a marketing relationship, for instance, with the Phoenix Sons, and the Phoenix Sons sent business to that car dealership pursuant to an agreement between the Phoenix Sons and the car dealership, and within that agreement it said, here are the interest rates that you will charge these customers in financing, and you may not change those interest rates until you provide us Phoenix Sons 90-days notice of any change, that those are the applicable, absent that notice, which we've alleged didn't occur. Now, as to the broader associations for the car, two months down the road, the dealer says, I will sell you this car, but the interest rate is going to be at, you know, 1.5%, and then I either buy the car or I don't. I use the car or I don't, understanding with the warning in my contract that the interest rate that applies is going to be a higher interest rate. Well, again, all of that is fine, except there's no authority in this case for Bank of America to issue cards to any AmeriCorps West customers, absent this affinity marketing relationship. What is this? Are we talking about Arizona law here? Yes, ma'am. Okay. What is the strongest case under Arizona law that determines whether a party is a third-party beneficiary? We would throw out this argument to the court with respect to the cardholders. Yeah, but what is the strongest case in Arizona that recognizes a third-party beneficiary relationship in a situation remotely? I would suggest to date it's the Nahum case, which we cite, which is very similar in this respect. You've got an agreement between a hospital and Blue Cross that has nothing to do directly with the actual patient subscribers. Within that agreement, pricing terms were set, and what the court held was in Nahum that the actual insureds were third-party beneficiaries for two reasons. One, they said they were named numerous times throughout the agreement. Two, they said the effect of the agreement was to preclude the hospital from charging more than was specified in the agreement. Here, the effect of the agreement is to preclude Bank of America from charging more than is specified in those pricing terms, absent 90 days' written notice to America West, and we would just throw out this general point. But isn't there a difference in Nahum? Because in Nahum, I am a patient or an enrollee of the Blue Cross medical program, and I am promised that if I check into the hospital, that whatever the rates are that are being reimbursed by Blue Cross for the services provided to me, I'm not going to have to pay any more than what my insurer pays for the covered services. And that promise was not made, as I understand this record, to the credit card holder. But the rates being charged are rates set in a contract, Mr. Farber. And, I mean, blue cow, brown cow, you know, if the terms of the contract are different, I'm not sure how you are supported by that. Well, here's what we would say just concerning the contract generally. There is no provision, any provision in the contract between America West and Bank of America that can be meaningfully implemented without the participation of the cardholders. That goes to marketing and retention. It goes to issuing applications. It goes to Bank of America and America West paying each other. Without the direct, intentional, and primary participation of the cardholders, which is the standard of the three-part test, that agreement means nothing. The cardholders have to be involved. In that sense, we think they are primary, direct. Is it involved by continuing to use the credit card? But not continuing by simply being an active cardholder. For any reason why you couldn't have canceled the card and gotten a new one, or the new rate? No. My brother, who's an economist, he does that all the time. Well, and that was our point below, that what they argued below was that their intention in this contract and that they complied with it was. Who's they? Bank of America. That what the parties intended was that this 8.49% was available, and that what the cardholders should have done, all existing cardholders like Mr. Cherry, should have called up Bank of America, canceled their card, filled out the new application, with all of the downside to all of that process that we set forth in our brief. And we don't think that was their commercially reasonable intent. We think their commercially. But isn't that why my mailbox is full of credit card? I mean, I get these things all the time. You know, if you sign up with the First National Bank of South Carolina, you get a better rate. Good balance. Yeah. Absolutely. Except in this case, there would be no reason for Bank of America and America West to negotiate a contract where they decided that, okay, how should we handle this? Let's set an interest rate where we're deliberately going to encourage thousands of our customers to cancel their cards, forfeit their fees. We'll lose revenue. Mileage won't be posted. Because people don't do it. Right. Exactly. But they could. If it were that important to get the rate. All they have to do is ask, right? Well, one of our points is that we think it's relevant and important that an examination be permitted of how America West and Bank of during the previous nine years. Now, what the district court said was that it would not consider that issue. And it said two reasons for that. One of which was contradictory. On page 6566 of ER, it says in its order, we will not consider, I will not consider how the parties implemented their previous contracts because in their previous contracts, they used a term, may be effective as against intends to offer. And therefore, I'm not going to consider those contracts. So he used a term from the contracts to support his decision that he wouldn't consider the contract. Okay. You've almost, you've got a little over five minutes left. Do you want to talk about the fees briefly? Yes. Thank you. We have just I have a question about that. It's not a certified class, correct? That's correct. How do you, how the fact that the class is essentially still putative rather than certified strengthen or weaken your argument that attorney's fees should be awarded on a pro rata basis across the entire class? Well, we think it does neither. Because a class representative owes duties to the class, as we've set out, just as a certified representative owes duties to the class, that it will have the same negative impact on and the same crippling impact on contract class actions being brought at all if a class representative can be held personally liable for $8,000 and should it go through trial $80,000 or times. There's no question the fees were incurred. Absolutely. But they were not incurred defending the individual's claim. They were incurred defending the perceived exposure to the putative class. And while we agree that that's essentially an unfair result in terms of a defendant being able to recover its fees, as we point out, under Arizona law, the right to recover fees is not and has been expressly rejected by the Arizona Supreme Court. It's not an ordinary. How does this work? Suppose I'm out there and I hold one of these cards just like your client. So I'm a member of the putative class. Yes. Now, does the bank get to recover fees from me? No. And that law is well settled and we agree with defendant. A pro rata apportionment results in the same result to the defendant as a successful defendant, a successful defendant's recovery of costs. So I don't have to pay them, but you pay only as if I did pay them. That's correct. And that's what those cases have said with respect to mandatory statutory costs after certification. And the grounds for that reasoning was that to do otherwise would fatally cripple the class action device because no, only lunatics and madmen will ever step forward to be a representative of a class if they think they can be personally exposed for thousands of times their individual claim. In that circumstance, the result is that the defendant simply does not recover those mandatory statutory costs. But that's after the class is certified. Well, it's or at the certification process. But because the case can be lost at either stage. I don't see the argument. I just don't understand the argument that that you can I'm not that a person can bring an utterly frivolous class action suit, cause a defendant to incur thousands and thousands and thousands of dollars of fees in order to defend it, and then not have any responsibility. Absolutely. And we agree with you. When a defendant brings an utterly frivolous case or even if there's a Rule 11 finding or a 341OC filing of bad faith, then that's absolutely right. That individual should be charged. But not if you just fail to state a claim? That's exactly right. Because you can be dismissed for failure to state a claim. Is there any authority for that? That if you don't state a claim, you don't, you're not liable for the fees? No, it's not. But if there's a Rule 11 finding, you are? Is there any authority? Well, no. In that sense, all of our questions are, that's a first impression question. And in that sense, it's a first impression question. Doesn't the district court have a lot of discretion in this? We think it has discretion to award reasonable attorney's fees in a manner which will not cripple the Rule 68 class action litigation device. But there is risk inherent in all class action. And presumably, there are pooling arrangements that are made by class counsel with regard to figuring out how to share expert witness fees and other costs of discovery that may be lost if the litigation is unsuccessful. Yes. Why should it be any different with regard to attorney's fees where the claim is determined to be completely unmerited? Well, because costs can be shared and costs can be advanced. Defense counsel has informed... Why can't fees be... Because defense counsel informed us that should we try to pay these fees and assume these fees on behalf of Mr. Cherry, we would be in violation of two state bar rules, 1.8E and 1.8J, and that we would be subject to disbarment. So they asked us actually to confirm in writing that although we would obviously think that's the fair result, and that can be a fair result in terms of costs, as the Rands case stated, that, gee, maybe counsel would pick up these costs, counsel has informed us that, in fact, they want confirmation that we will not personally pick up these costs and that Mr. Cherry will personally pay these costs. Okay. You have about a minute left. All right. Thank you very much. I think we should hear from you everything. Can you please... Are you... You can stay here. Please stay in front of the bar so that we can present your rebuttal. May it please the court, counsel, my name is Jennifer Hadley-Diogardi, and I'm from the Phoenix office of Snell and Wilmer, and I'm here on behalf of the Defendant Appellee Bank of America. The core of operative facts that I think everyone agrees on here is we've got two issues with respect to this third-party beneficiary claim. One, does this card... I'm sorry, not the card member agreement, but what we've been calling the affinity agreement, the agreement between the bank and the airline. Does that agreement indicate and express intent on the face of the agreement to create a third-party beneficiary right in the plaintiff and other similarly situated card members? And then if you do find that that agreement does create a third-party beneficiary right, what is the impact of the plaintiff cardholder's direct contract with the bank on that right? Plaintiff has a direct cardholder agreement with the bank providing for a 9.99% interest rate. That agreement also reserves discretion in the bank to set the terms for that card and to change those terms for that card. That direct cardholder agreement with the bank does not state that if the bank enters into an agreement with a third party, we're then going to change your rate as well. We've got a one-on-one relationship with that cardholder, and that's really in need to disclose to this person what you're going to charge to them and on what terms that rate is going to be changed. On the second hand here, we've got this card, I'm sorry, the affinity agreement. I keep getting the names of these two agreements mixed up. The agreement with the airline. This agreement is 40-something pages. Plaintiff keeps maintaining that the bank has no authority to extend credit to cardholders but for this agreement, and I disagree with that position. The plaintiff says that, how does the plaintiff reference, say that he's referenced in the affinity agreement? The affinity agreement refers to an intent to offer to flight fund participants. So it's FF participants is what he's saying. Right. That's got his name on it. And if you look in the terms and conditions of that affinity agreement, it defines FF participant as someone who is either an America West customer or already enrolled in the flight fund program. That definition does not necessarily include flight fund members who already hold a card. And I think that comes into play when you look at section 7 of the affinity agreement. Plaintiff has demanded that he's entitled to enforce an obligation upon the bank to communicate to him, not only to give him the 8.49% margin rate, but to do so in a very specific fashion. He's claiming that the bank is obligated to send directly to him, not through a mailer provided to America West to send to flight fund participants, but obligated to communicate directly to him through a change in terms notice this 8.49% margin rate. And if you examine the entirety of section 7 of the affinity agreement, which lays out in detail the bank's obligations with respect to communicating with retention program directed at existing cardholders as well as communicating with new cardholders or potentially new cardholders. Doesn't he say he's entitled to the adjustment without applying for a card? In essence. And this is something which actually brings up a good point which I would like to raise with you all to clarify. It's a bit confusing because when you looked at the arguments that were addressed on the bank's motion to dismiss, the plaintiff's position at that point was really that the bank was obligated to just charge me this. Apparently unilaterally, immediately change his interest rate to 8.49%. I think after the oral arguments and reading Judge Teelberg's opinion with respect to looking at the limitations in his card member agreement for how the bank can change his rate, and then also the language in the affinity agreement with respect to the term offer as opposed to immediately charge, plaintiff then came back on the motion for reconsideration and said, no, what I really meant to say and give me a chance to amend my complaint to say is what the bank was obligated to do was to send me directly, not through a mailer provided from America West, but to send me directly this change in terms notice. And so when you're looking at references in the plaintiff's appellate level briefs, he sometimes makes references to Judge Teelberg saying, well, you were really saying X when what you meant to say was Y. Well, at one point he was saying X meant Y on the motion to dismiss and then it was not until the motion for reconsideration that the argument shifted to this offer and the way in which the offer needed to be conveyed. And I think this sometimes creates some confusing issues in reading the appellate briefs. You need to look at which order the plaintiff is citing to and consider which type of obligation he was advancing at that point in time. Let me ask you a question. The affinity agreement, I take it, establishes the terms that Bank of America is willing to offer to America West frequent flyer card holders who apply through America West for the Bank of America credit card. Is that right? That's correct. And presumably there is an interest rate that is quoted, which is in essence what the bank is willing to offer that particular program for. America West then, I guess, gets pays Bank of America or gets paid by Bank of America separately for participating in the program. Is that how it works? Actually, and those are the portions and I can understand your confusion. Those are the portions of the affinity agreement that we had to redact for confidentiality. Yeah, I figured it has to do with apparently this is a very competitive industry. These banks and these airlines negotiate these agreements. And basically what the bank does is they buy the miles from the airline at a specifically negotiated rate. So the airline does not benefit from the specific interest rate in the sense that they get money directly in their pocket from it. However, it's not tied to the interest rate, although it is tied somewhat, I suppose, to the success. Exactly. And that's why the interest rate is of interest and of benefit to the airline. That's helpful. I figured that's why you kept it out, but I really did need to have some understanding. Those provisions all that were redacted had to do with the compensation that flowed directly from the bank to the airline and how that was reported. You don't want Southwest to know that. No, because if the bank tried to enter an agreement with them, they'd hold those terms over our heads. So let me get back to the argument again. And I think another important point to make is plaintiff has talked at length in the appellate briefs and then here today about terms such as reasonably disputed inferences. The contract is reasonably susceptible. I'm encouraging Judge Tilburg in this court to look at the prior agreements between the bank and the airline. What plaintiff is really asking this court to do is to put Arizona back in the camp of the restatement with respect to how third-party beneficiary rights are created. The first and now currently the second restatement talk about examining the surrounding circumstances of the agreement and the subjective intent of the parties. Arizona specifically rejected that approach nearly 50 years ago in Irwin and has consistently cited Irwin with approval when they expressly rejected the approach of the restatement and said, you know what, with respect to this intent, we don't like this gray area, especially with respect to people that aren't parties to this agreement. We want people who enter agreements with each other to be certain as to when they're going to owe something to somebody else. And for that reason, we're going to require this contract on its face to express a clear and direct intent to convey a specific benefit to that third party. Now, examples of when the Arizona courts have interpreted contracts to find a third-party beneficiary argument are, I think it was U.S. Fidelity and Guarantee versus Farrar's Plumbing. It had to do with an owner of a construction project and a contractor entered into an agreement together with respect to the construction. And in that agreement, the owner specifically agreed to purchase insurance. And the point of the owners purchasing the insurance was to protect the interests of the contractor, third-party subcontractors, as well as sub-subcontractors. That agreement also stated that if there was some sort of damage or loss to the the owner's right to recover was going to be limited to that insurance. And in that context, the Court looked at that and said, well, these parties clearly intended this owner to purchase this insurance to insulate this third-party like this third-party subcontractor from liability. And they also specifically agreed not to go after that third-party subcontractor. That's an example of when the courts have found an expressed intent in the agreement to convey something directly and intentionally to that person upon which they can recover. An example similar to this one, when the courts have not found a third-party beneficiary right, I would refer the Court to the Baserto case in which a party who was injured on a mining construction-type site tried to sue based on a contract between, again, a similar owner-contractor situation in which one of the contractors on the job specifically agreed to take safety measures to protect the employees, the public persons on the job site. They agreed to implement those safety measures, which, frankly, conveyed an absolute benefit to those people working on the job site. But did that agreement specifically communicate an intent to create an actionable obligation on the part of people on the job site? No, the purpose of that agreement was to convey the obligations of the contractor and the project owner with respect to running the site. That's similar to the situation we have here. I might submit to the Court that Judge Tilburg correctly applied the Irwin is advancing a theory of which he originally advanced on the motion to dismiss, that the bank was obligated to unilaterally charge him a particular interest rate, or whether it's the second theory, that the bank was obligated to directly send him some sort of change-in-terms notice. You cannot find anywhere in that credit card or the affinity agreement a direct and clear expression of intent to benefit the cardholder as opposed to the bank and the airline trying to define their relationship with respect to each other. And that is why Judge Tilburg disposed of the third-party beneficiary claim. Now, moving on to the claim for breach of the covenant of good faith and fair dealing, plaintiff brought that basically based on two separate agreements. He sued for the covenant of good faith and fair dealing in the affinity agreement in a third-party beneficiary basis. Now, if the Court does not find that he's a third-party beneficiary, he obviously does not have a right to sue to enforce a covenant on a third-party beneficiary basis. He also sued based on the covenant contained in his card member agreement, essentially stating that the bank breached some sort of duty of good faith in leaving the agreement exactly the way he agreed to pay the interest. The bank supposedly breached some sort of duty of good faith by continuing to charge him the exact interest rate he agreed to pay. There's no – and plaintiff is trying to incorporate some sort of term from this affinity agreement into his card member agreement as the source of the duty. The bank concedes that there are cases in which this covenant can be formed or based upon something outside of your contract. However, there is no case that plaintiff can cite to and the bank could find none in which the source of that duty was a lesser third-party beneficiary right. And I think, Judge Tolman, you kind of hit the nail on the head in the impact that such a holding would have on the certainty when people in lending situations enter into an agreement with their customer. If they enter into some sort of, you know, again, global agreement, say, with a senior financer to, you know, extend, you pointed out, car loans in the future at a certain rate, what happened to the certainty and the terms I've entered into with you? And if you can import some sort of nebulous good faith standard into an agreement that requires you – and a way to distinguish some of the cases plaintiff cited is there was one or two, the Beatty case in particular where my client, Bank of America, was prohibited from adding an alternative dispute resolution term to an agreement despite retaining express discretion to change the terms of the agreement. Now, the court in that case was looking at when you retain discretion to change the terms, it's reasonable for the parties to think you're just going to change the existing terms. You're not going to add completely new ones that we never thought about when we entered this agreement to begin with. And there was no provision for ADR to begin with in the card member agreement. And for that reason, despite the express retained discretion in the bank to add terms, the court said not that kind of term. We need an express waiver over right to a jury trial here. That's not the kind of term the party was anticipating. Conversely, if you apply that to this situation, the plaintiff is saying that we cannot exercise that grant of discretion to change an interest rate, which was a term that was already in the agreement, and is saying not only can we not exercise, we can't exercise that discretion to leave it the same, which is different than Beatty, where the court was exercising the discretion to import a different term. I'd like to turn my attention for the last few minutes here to the attorney fee issue. The standard on that is an abuse of discretion standard. Plaintiff in essence is asking this court to create new law in Arizona inasmuch as he is basically asking for a blanket exemption to the application of 12-34101 when you are a plaintiff who has brought an action on behalf of a class and you've got a relatively small individual claim. There's not a case in Arizona that says you cannot apply that statute to a particular group of plaintiffs. It's to be applied evenly to plaintiffs and defendants, and I don't believe that the apocalyptic result of no more contract class actions is going to result from this, and I don't believe that for a couple of reasons. One is plaintiff has pointed out in his briefs it is not necessarily a done deal that if you lose an action, you're going to get hit with fees. There is a six-step inquiry that the court must undertake. It's fact-specific. It's tailored towards the circumstances of the case. It involves the party's conduct in the case. It involves whether the case could have been resolved. It involves the strength of the theories, and the person that's best in the position to judge whether this is the type of case that's going to suffer from people bringing valid claims in the future, it's that sixth factor there, is the trial judge. Yeah, and I assume that your client would argue that we don't want to encourage people to file meritless class actions. I agree with that. That's exactly what my client would argue, and here I think something that the judge, although he didn't say so in his order, I think it's something that influenced the opinion is this was a situation where the plaintiff amended the complaint not once, but twice, didn't survive a motion to dismiss, and then chose to bring a motion for reconsideration. You know, it's the conduct that goes on in the case, the opportunities to present the theories, the strength of the theories. It does not have to be a frivolous case. We've got Rule 11 for that, and in Arizona we've also got 12-349, as well as Sub C of the statute that's at issue here. That's for frivolous cases. Sub A is for something less than a frivolous case, but one that you still want to encourage a party to think twice about bringing, and I submit to the court that this is just such a case. Now, with respect to the pro rata share argument, plaintiff has cited cases that have to do with whether or not you can examine the financial background of a plaintiff, and that a plaintiff has to say at deposition that he will agree to pay 100 percent of the costs as a precondition to finding that person an adequate class representative. I think that's a different inquiry than where we are on the back end, where not only are we not even addressing whether this person is an adequate class representative, we found that the claims cannot go forward. I think the Wright v. Schott case is directly on point on this issue, and I believe it was either the Ninth Circuit or the District of Arizona, I forget which. I think it was the Ninth Circuit, in which they awarded $60,000 in costs against the claims were dismissed prior to class certification. That person, because there was no class to be certified to share those costs, that person had to pay all $60,000 of those costs. I think putting this pro rata share argument also into practice, it really baffles me as to how that would be done in a way that would be fair to a party who successfully defended the claim on the merits. Is the bank then to go through and disclose all of the existing cardholders who had a card at a different interest rate as of January 2001, add that up, and then figure out what fractional share plaintiffs should be? It seems to me that that's a rather large burden. I think you had this well briefed. All right. Thank you. Thank you. Thank you. As fast as I can speak, you're right. We have about a minute left. Judge Callahan, yes. The first category of FF participants, defendant did not dispute that below, and Judge Teelburg specifically found that. Second, defendant did not discuss at all the Beaudry case on plaintiff's claims of breach of covenant of good faith and fair dealing in the cardholder agreement. The facts there are virtually analogous to these facts in terms of what they're suggesting about retained rights, sole discretion, and course of conduct. In that regard, we continue to maintain that because Mr. Cherry over a 10-year period was rates specified in that agreement, that that course of conduct under Beaudry supports that we've stated a claim. Stating a claim doesn't mean we're going to win the claim. It means we've stated a claim. Third, the Wright v. Schock case, it's a $113,000 claim, was a $60,000 cost award. There was no argument made before this court, and it was a Ninth Circuit case, that that would negatively impact the class action device, fatally cripple it. Fourth, defendant has agreed that with respect to costs, that costs that are grossly disproportionate will result in that sort of crippling, that only lunatics and madmen would ever file a case like that in the first instance. The only disagreement in that regard is the timing. And because every class action must be filed initially by an individual plaintiff, and every class action can be lost at any stage of the proceedings, hindsight is not, as the court said in Christianburg, There shouldn't be any risk involved in filing one that has no merit, is that? Well, yes, ma'am, but It's your argument. We understand your argument. Okay. But just as in Christianburg, where the Supreme Court held with respect to Title VII, that a prevailing, only prevailing plaintiffs, only prevailing plaintiffs should recover attorney's fees with a neutrally facial statute, we're not advocating that stringent a standard here, because otherwise the policies underlying class actions will be crippled. Thank you very much. Thank you. The case just argued is submitted for decision, and that concludes the court's calendar for this morning. The last case has been settled, and the court stands adjourned. All rise. The court for this session stands adjourned. Thank you.
judges: Schroeder, Tallman, Callahan